UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| PAUL SHOCK and SUSAN SHOCK | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:11-CV-044-JD |
| | ) | |
| RUAN TRANSPORT CORPORATION, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION and ORDER

Now before the Court are various evidentiary objections made by counsel just prior to the

scheduled trial [DE 89, 93, 94]. As a result of the late filings, the trial had to be vacated. The

Court also considers plaintiffs' recently filed supplemental memorandum in opposition [DE 107]

to the defendants' original request to exclude the expert testimony of Patricia Deatrick [DE 88],

previously ruled on by the Court [DE 97]. These evidentiary matters are fully briefed and ripe

for ruling.

**I.      DE 93:  Plaintiffs' objection to testimony regarding malingering and secondary gain
from witnesses Dr. Sepahbodi, Ms. Patricia Deatrick, and Dr. Rudy Kachmann.**

Plaintiffs object to portions of depositions taken of Dr. Sepahbodi, Patricia Deatrick,

MSW, and Dr. Kachmann wherein defense counsel cross examined the deponents on the issue of

malingering, i.e., that malingering (and secondary gain) must be ruled out before diagnosing Post

Traumatic Stress Disorder (PTSD), whether plaintiff Paul Shock showed signs of malingering,

and how the deponent made the determination relative to Shock [DE 93]. Plaintiffs have

provided a copy of those portions of the depositions which they seek to have redacted. In

summary, plaintiffs' argument is that any questioning suggestive of malingering is irrelevant and

inappropriate where there is no evidence in the record to support a conclusion of malingering [DE 93; DE 102].   Plaintiffs believe that the harm is in the questioning itself because it plants a seed of doubt in the minds of the jury, even though the deponents ultimately testified that Paul Shock is not malingering.  Plaintiffs further argue that the defense should not be permitted to suggest that other tests which were not conducted would have discovered malingering on the part of Paul Shock.

Defendants respond that this line of questioning is relevant, even without any factual foundation, because it goes to the basis and weight of the deponents' opinions, and because the Court has previously noted that a treating physician should rule out alternative explanations before diagnosing PTSD based on a patient's own report of symptoms[1] [DE 100].  In support, defendants primarily rely on *Tucker v. Nike, Inc.*, 919 F.Supp. 1192, 1196-97 (N.D. Ind. 1995) wherein the district judge noted that with respect to determining the reliability of an opinion regarding medical causation, the court may consider whether the expert successfully ruled out other possible causes of the claimed injury.

Having considered the parties' arguments, the Court rejects the plaintiffs' objection and determines that the deponents shall be permitted to testify to the objected to portions of the depositions concerning malingering and secondary gain.  First, the testimony is fairly limited in nature.  Second, the testimony is relevant.  For example, Plaintiffs intend to introduce the testimony of Dr. Sepahbodi who agreed with Shock's diagnosis of PTSD, and Dr. Sepahbodi

---

[1]To clarify, the Court did not, as defendants contend [DE 100 at 4], state that "the DSM-IV clearly requires that a treating physician or other health care provider rule out malingering before diagnosing a patient with PTSD"; rather, the Court held that "[w]hether the DSM IV 'expressly indicates' that malingering must be ruled out before diagnosing PTSD or not, failing to consider such questions before accepting a patient's representations wholesale when the patient has an obvious potential financial motive simply is not scientifically reliable." [DE 97 at 20].

himself admitted that pursuant to the DSM-IV, malingering is to be ruled out before a diagnosis of PTSD is to be made [DE 93 at 11].  Thus, it is Shock's asserted diagnosis of PTSD itself which brings the issue of malingering into play, *see e.g.,* Fed. R. Evid. 401 (evidence is relevant if it tends to make a fact more or less probable and is of consequence), and it is unnecessary to have independent facts indicative of Shock's malingering in order to make the topic more relevant.  Moreover, whether or not other causes, such as malingering, might have contributed to the extent of the injuries sustained by Shock in the accident, is a fair subject for cross examination of these deponents in order for defendants to challenge the strength of their testimony and reveal any shortcomings in their conclusions.  In other words, such testimony is grounds for cross examination, not wholesale disqualification of the witness' testimony in this respect.

In addition, the evidence sought to be excluded relative to malingering is not unfairly prejudicial.  While it is true that the questions themselves will present the issue of possible malingering, the answers provided by the deponents consistently refute the presence of malingering with respect to Paul Shock.  The evidence relative to malingering goes to weight, not admissibility, and the Court does not believe that the probative value of such testimony is substantially outweighed by any basis under Rule 403, including the danger of unfair prejudice, confusion of the issues, or misleading the jury.

On the present record, the Court intends to allow Dr. Sepahbodi, Patricia Deatrick,[2] and Dr. Kachmann to testimony on the issue of malingering and secondary gain.

---

[2]The Court rules separately on whether Ms. Deatrick is *qualified* to render an opinion relative to a PTSD diagnosis and malingering. *See infra*.

II.    **DE 94:  Plaintiffs' objections to questions posed on cross examination during the depositions of Dr. Lorenz, Dr. Sepahbodi, Patricia Deatrick, MSW, Dr. Kachmann, and Dr. Doyle.**

Plaintiffs object to certain questions posed during the cross examination of deponents Dr. Lorenz, Dr. Sepahbodi, Patricia Deatrick, MSW, Dr. Kachmann, and Dr. Doyle, and have attached the relevant portions of each deposition [DE 94], with supplemental argument provided in their reply [DE 102].  Defendants have responded [DE 100].  The Court individually addresses each deposition and the objections thereto.

Deposition of Dr. Lorenz:

•    page 106, line 15 to page 107, line 11—Plaintiffs object to questions regarding any chiropractic treatment received by Paul Shock in the five years prior to the accident, arguing that no good faith basis exists for the questions which assume facts not in evidence.  However, defendants believe the line of questioning is relevant given Shock's undisputed pre-existing degenerative arthritic condition which caused him to seek medical treatment before the accident.

The Court agrees with defendants.  Dr. Lorenz was Paul Shock's chiropractor and there is no dispute that Paul Shock suffered from a pre-existing degenerative arthritic condition which Dr. Lorenz believes, and Plaintiffs allege, was exacerbated due to the accident involved in this litigation.  Defense counsel's questions concerning Dr. Lorenz's knowledge about any prior chiropractic treatment (not some unrelated type of treatment as suggested by plaintiffs) is entirely appropriate to determine Dr. Lorenz's knowledge of such treatment and the basis upon which Dr. Lorenz's opinion rests.  Even though Dr. Lorenz responded that he was unaware of any such previous treatment, the cross examining lawyer for defendants was not required to have proof of the assertion underlying the question, but simply a good faith basis. *See e.g., United States v.*

4

*Beck,* 625 F.3d 410, 418 (7th Cir. 2010) ("an attorney does not need definitive proof to have a good-faith basis, just "[a] well reasoned suspicion that a circumstance is true.").  Here, defendants were not taking a "shot in the dark approach" at asking their questions, *id.*; rather, the facts surrounding Paul Shock's pre-existing medical condition, along with the type of treatment provided by Dr. Lorenz and the nature of his testimony relative to Paul Shock's aggravated injury, provided a good-faith basis for defense counsel to examine Dr. Lorenz about Paul Shock's having any previous chiropractic treatment.  Nor can it be said that defense counsel simply cross examined Dr. Lorenz on the topic because counsel was hoping that the question alone would insinuate a helpful answer. *See e.g., United States v. Taylor*, 522 F.3d 731, 736 (7th Cir. 2008). The question itself also does not imply that Paul Shock's pre-existing condition was somehow more severe than it was, as plaintiffs suggest.

Not only is the evidence admissible and relevant because defense counsel had at least a reasoned suspicion that Dr. Lorenz should have known about any prior chiropractic treatments received by Paul Shock, but the evidence is not substantially outweighed by any basis under Rule 403, especially where Dr. Lorenz's response denied any such prior treatment.

• page 40, lines 2-9—Defendant agrees to omit this portion, and as a result of the agreement the Court orders it stricken.

• page 52, line 23 to page 53, line 7— Plaintiffs object to the "form" of a question concerning Paul Shock's going to another doctor for the MRI.  Yet plaintiffs failed to detail the objection sufficiently so that it might have been corrected at the time, and thus have waived it. Fed. R. Civ. P. 32(d)(3)(B).  To the extent plaintiffs objected because the question is leading, the objection is overruled since leading during cross examination is acceptable. Fed. R. Evid. 611(c)

(indicating that ordinarily the court should allow leading questions on cross-examination).

•      page 85, line 14 to page 87, line 11—Plaintiffs object to Dr. Lorenz commenting on the findings made in the radiologist report concerning Paul Shock's MRI (that it showed degenerative joint disease), and argue that Dr. Lorenz's testimony about what the radiologist concludes from the MRI is hearsay within hearsay. Defendants respond that under Fed. R. Evid. 703, it is appropriate for an expert to rely on hearsay if it is a kind reasonably relied upon by experts in the field, and therefore Dr. Lorenz can reasonably rely on the findings of a radiologist.

Defendants are correct. Dr. Lorenz is an expert witness in this case. As the Court noted in a previous order [DE 97 at 22-23], "[r]ule 703 of the Federal Rules of Evidence is explicit that the materials on which an expert witness bases an opinion need not be admissible, let alone admitted, in evidence, provided that they are the sort of thing on which a responsible expert draws in formulating a professional opinion." *Peabody Coal Co. v. Director, Office of Workers' Comp. Programs*, 165 F.3d 1126, 1128 (7th Cir. 1999) (citations omitted). It is indisputable that responsible medical experts can, and almost always do, rely at least in part on medical assessments performed by other personnel. To be sure, "'the trustworthiness of the underlying data is not irrelevant.'" *Gong v. Hirsch*, 913 F.2d 1269, 1273 (7th Cir. 1990) (quoting *Barrel of Fun, Inc. v. State Farm Fire & Cas. Co.*, 739 F.2d 1028, 1033 (5th Cir. 1984)). If the report on which an expert relies is itself lacking in foundation, then reliance on that report may be unreasonable. *Id.*

But here, Dr. Lorenz was entitled to rely on a report completed by the radiologist upon personally reviewing Paul Shock's MRI, and there is no reason to suggest that Dr. Lorenz cannot rely on it and incorporate it into his opinion. *See e.g. Dura Automotive Sys. of Ind., Inc. v. CTS*

*Corp.*, 285 F.3d 609, 620 (7th Cir. 2002) (noting that an expert physician would reasonably rely on a radiologist to do her job and use adequate equipment, and a party could introduce expert radiologist testimony in rebuttal to show that in this specific case that reliance was unjustified—therefore any potential flaws go to weight, not to admissibility of the evidence).  Dr. Lorenz's reliance on an MRI report by the reviewing radiologist is sufficient to warrant reliance by a reasonable expert and is not prejudicial.

Deposition of Dr. Sepahbodi:

•      Plaintiffs objected to Dr. Sepahbodi's deposition testimony referencing Paul Shock's criminal history and prior substance abuse; however, the Court has already granted the Plaintiffs' motion in limine in this respect [DE 98] and therefore the testimony is stricken. Further, to the extent Plaintiffs reiterate their objection to any testimony concerning malingering, the Court so too reiterates its conclusion that this type of testimony is admissible. *See supra*, Part I at pages 2-4.

Deposition of Ms. Patricia Deatrick, MSW:

•      Plaintiffs object to the colloquy between counsel at page 31 lines 16 - 25, to which defendants did not provide a response.  Given that the attorney colloquy is irrelevant the Court sustains the objection and orders that portion of the deposition to be redacted.  To the extent plaintiffs reiterate their objection to any testimony concerning malingering, the Court again adopts its conclusion that this type of testimony is admissible. *See supra*, Part I at pages 2-4.

Deposition of Dr. Kachmann:

•      Plaintiffs reiterate their objection to any testimony concerning malingering, but the Court adopts its previous conclusion that this testimony will be admitted. *See supra*, Part I at

7

pages 2-4.

Deposition of Dr. Doyle:

•       page 28, line 15 to 25—Plaintiffs object to this portion of Dr. Doyle's deposition and defendants agree to redact it.  So the Court sustains the objection and orders this portion of the deposition stricken.

•       page 34, line 23 to page 36, line 2—Plaintiffs object to the testimony that Paul Shock saw Dr. Doyle on May 8, 2009 for blood in his stool and a colonoscopy, which Dr. Doyle indicated is unrelated to the underlying accident.  Plaintiffs agree that the subject matter of the testimony is not a medical problem at issue in this lawsuit, and therefore they argue that it is irrelevant to this case and should be omitted.

However, the Court agrees with defendants that even though Paul Shock's problems with having blood in his stool are admittedly not relevant to the damages caused by the instant action, what is relevant is Paul Shock's non-complaint about relevant medical issues during the May 8, 2009 appointment, which was shortly after the February 2009 accident.  In other words, under Fed. R. Evid. 401, the fact that Paul Shock did not complain about neck or back pain or any stress-related emotional problems—medical conditions for which Paul Shock alleges were caused by the underlying accident—makes the evidence (or lack thereof) relevant because it has the tendency to make Paul Shock's alleged injuries and their severity potentially less probable and is of consequence in determining damages.  As a result, the plaintiffs' objection to this portion of the deposition is overruled.

•       page 40, line 8 to page 41, line 7—Here, Dr. Doyle testified that Dr. Kachmann gave no indication of nerve damage during Paul Shock's first visit with Dr. Kachmann on April

8

2, 2009.  Plaintiffs believe that the testimony is misleading, confusing, and in part constitutes attorney colloquy.  Yet, defendants argue that the testimony is not confusing since the question was clarified.

In fact, this is true—by confirming that the testimony only concerned Paul Shock's first visit with Dr. Kachmann and not other visits, there is no chance of any confusion nor is it likely the jury will be misled by the testimony.  In addition, any attorney colloquy was caused by the need to clarify the question and is appropriate.  Thus, the testimony is not improper on these grounds.  Moreover, as argued by defendants, the testimony is relevant and not unfairly prejudicial.  Dr. Kachmann's deposition specifically addresses the issue of nerve damage to Paul Shock's benefit indicating that "there could be some nerve involvement." [Kachmann depo. at 20].  And Dr. Doyle's testimony in this respect is simply based on his understanding of Paul Shock's medical history and forms the basis for Dr. Doyle's treatment (which included Dr. Doyle's impression that Dr. Kachmann did not detect nerve damage at the initial visit).  Thus, the objection is overruled.

• page 48, line 14 to line 19—In the context of discussing the differences between Paul Shock's February 2009 and April 2010 MRIs, Dr. Doyle testified that the February 2009 MRI report did not indicate lumbar spondylosis, and that a radiologist would typically note such a finding (as was done with respect to the later MRI).  Plaintiffs object to the testimony based on relevance and speculation as to what a radiologist may omit from a report.  Defendants argue that Dr. Doyle is qualified to testify as to what a radiologist would typically note in his report, and the testimony is relevant consistent with Rule 703.

The Court agrees with defendants. As the Court previously indicated, *supra* at page 6-7,

Rule 703 of the Federal Rules of Evidence indicates that the materials on which an expert witness bases an opinion need not be admissible, let alone admitted, in evidence, provided that they are the sort of thing on which a responsible expert draws in formulating a professional opinion. *Peabody Coal Co.*, 165 F.3d at 1128 (citations omitted).  Dr. Doyle, like Dr. Lorenz, is entitled to rely on a report completed by a radiologist in reviewing Paul Shock's MRIs. *See e.g. Dura Automotive Sys*, 285 F.3d at 620.  Moreover, Dr. Doyle is qualified to review MRI reports and provide testimony concerning what is customarily reported or omitted from such reports (and as an aside, it is telling that plaintiffs don't seek to strike the portion of Dr. Doyle's testimony concerning what was reported by the radiologist on the 2010 MRI).  Plus, whether or not Paul Shock's subsequent MRIs showed additional degenerative changes or inflammation which were not revealed in prior MRIs is certainly relevant to the nature of Paul Shock's injuries and any damages due in this case.  Lastly, the probative value is not substantially outweighed by any prejudicial effect.

•      page 50, line 24 to 51 line 11 —The testimony concerns whether Paul Shock received joint injections for an acute condition related to the accident.  This portion of Dr. Doyle's deposition is highlighted in DE 94 (a copy of the deposition), but plaintiffs make no argument in their motion or reply [DE 94; DE 102] explaining the basis of the objection.  As a result the objection is waived and overruled.  The Court would also note that the foundation for Dr. Doyle's knowledge was thereafter provided, wherein he indicated his having referred Paul Shock to the Pain Clinic and having reviewed the reports from the Pain Clinic in considering further treatment for Paul Shock.

•      Pages 54 to 69 are included in the copy provided of Dr. Doyle's deposition [DE

94 at 21-25] without any indication as to why, and no portions of the deposition were highlighted to identify the need for the Court's ruling on any objection.  As a result, the testimony will not be stricken.

- page 121, line 2 to page 122, line 16— The testimony in this portion of Dr. Doyle's deposition clarifies that Paul Shock's treatment for rectal bleeding, bronchitis, chest congestion, and lung disease are not related to the accident nor are plaintiffs seeking to recover for the conditions and treatment.  Defendants believe the testimony is relevant to show that these conditions are not related to the accident.  The Court disagrees.  It would make no sense to include testimony concerning every possible ailment for which Paul Shock is not claiming resulted from the accident.  Such evidence serves no other purpose here and is irrelevant because it does not tend to make Paul Shock's alleged injuries or their severity more or less probable and the evidence is of no consequence in determining damages. Fed. R. Evid. 401.  This evidence shall be stricken so long as plaintiffs do not attempt to introduce any evidence suggesting that these ailments are somehow related to the February 2009 motor vehicle accident.

- page 132 to end—This portion of the deposition consists of attorney colloquy and defendants agree that it should be struck.  Accordingly, plaintiffs' objection is sustained.

III.    **DE 89:  Plaintiffs' motion to quash the deposition of Dr. Sardo and for a protective order or in the alternative to exclude the deposition at trial.**

On May 13, 2013, plaintiffs filed a motion to quash or exclude Dr. Sardo's deposition in response to defendants scheduling the deposition for May 16, just days before the trial on May 28 [DE 89].  Plaintiffs claim that they first received notice on April 24, 2013, that Dr. Sardo was going to be a witness in the case and a deposition was scheduled.  Plaintiffs argue they would be

prejudiced if the deposition is allowed because discovery has been closed, they were not able to depose Dr. Sardo prior to the deposition, and all of the plaintiffs' medical experts have already been deposed so they would be precluded from having their experts address the deposition testimony of Dr. Sardo [DE 89; DE 101].  Plaintiffs further argue that defendants have failed to establish good cause to permit the belated deposition and defendants have failed to properly disclose Dr. Sardo as a trial witness under Federal Rule of Civil Procedure 26(a).

In response [DE 92], defendants argue that they did properly disclose Dr. Sardo on December 29, 2011, by filing an expert disclosure list which referenced their incorporation of "expert disclosures . . . made by Plaintiffs in this case as well." [DE 92-1 at 2]. In turn, plaintiffs' expert disclosure list indicated they may present the testimony of "[a]ny and all doctors/medical personnel who have examined Plaintiff, Paul A. Shock, at the request of and/or on behalf of the Bureau of Workers Compensation" [DE 92-2 at 2].  Neither parties' expert disclosures or witness lists actually identified Dr. Sardo.  Defendants believe that there is no prejudice to plaintiffs in allowing the deposition because plaintiffs were aware of Dr. Sardo as an examining physician and were familiar with his August 31, 2010 medical report [DE 92-3].  Defendants contend that they were not required to provide a litigation specific report pursuant to Rule 26(a)(2)(B) because Dr. Sardo was not "retained or specially employed" to provide expert testimony; rather, Dr. Sardo completed his report after conducting a one day Independent Medical Examination of Paul Shock for the Ohio Bureau of Worker's Compensation for purposes of determining medical improvement and vocational rehabilitation [DE 92-3].

While it is true that defendants did not need to produce the written report required of an expert specifically retained for purposes of litigation under Rule 26(a)(2)(B), they acknowledge

that disclosure of Dr. Sardo as an expert was required under Rule 26(a)(2).  Rule 26(a)(2) states

in relevant part:

> (2) Disclosure of Expert Testimony.
>> (A) In General. In addition to the disclosures required by Rule 26(a)(1), **a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.**
>>
>> (B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain: . . .
>>
>> (C) Witnesses Who Do Not Provide a Written Report. Unless otherwise stipulated or ordered by the court, **if the witness is not required to provide a written report, this disclosure must state:**
>>> **(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and**
>>> **(ii) a summary of the facts and opinions to which the witness is expected to testify.**
>>
>> (D) Time to Disclose Expert Testimony. **A party must make these disclosures at the times and in the sequence that the court orders.** Absent a stipulation or a court order, the disclosures must be made:
>>> (i) at least 90 days before the date set for trial or for the case to be ready for trial; . . .

Fed. R. Civ. P. 26(a)(2).  The failure to comply with Rule 26(a)(2) has consequences:

> (c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.
>> (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), **the party is not allowed to use that information or witness to supply evidence** on a motion, at a hearing, or **at a trial, unless the failure was substantially justified or is harmless**.

Fed. R. Civ. P. 37(c).  And district courts have broad discretion in supervising discovery,

including deciding whether and how to sanction misconduct, for they are much closer to the management of the case and the host of intangible and equitable factors that may be relevant in exercising such discretion. *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012) (citations omitted).

While defendants were admittedly supposed to comply with Rule 26(a)(2) for purposes of disclosing Dr. Sardo as an expert who would provide testimony at trial, their attempt at demonstrating their compliance with Rule 26(a)(2) fails on account of their incomplete and belated disclosure. At a bare minimum, defendants were required to disclose to plaintiffs the *identity* of all expert witnesses they may use at trial to present evidence. Fed. R. Civ. P. 26(a)(2)(A). And although a litigation report was not required under Rule 26(a)(2)(B), defendants were charged with the duty of complying with Rule 26(a)(2)(C), requiring their disclosure of Dr. Sardo to also include the subject matter on which he was expected to present evidence and a summary of the facts and opinions to which he was expected to testify. Defendants incredulously argue that merely incorporating by reference the plaintiffs' listing of *unspecified* medical personnel who examined Paul Shock for purposes of workers compensation benefits is a sufficient disclosure. But, this is clearly not adequate under the explicit terms of Federal Rule 26(a)(2), and the defendants own conduct in disclosing another expert demonstrates this fact—defendants specifically disclosed the identification of Dr. Suh in their December 23, 2011 expert list, along with Dr. Suh's address and relevant materials [DE 92-1 at 2]. In other words, defendants knew that the specific identification of the expert witness along with the subject of his testimony was required. In addition, if the defendants needed more time to properly and timely disclose Dr. Sardo, the defendants conduct similarly demonstrates that they

14

knew how to show good cause and request an extension of time for purposes of disclosing additional witnesses under Rule 26(a)(2).  This is so because they requested such an extension in order to timely and properly disclose Dr. Suh [DE 22]. *See* Fed. R. Civ. P. 16(b)(4) (requiring that the pretrial schedule which sets the deadline for Rule 26(a) disclosures is "to be modified only for good cause and with the judge's consent.").  Despite this, Defendants never sought additional time to identify Dr. Sardo as a witness likely to provide testimony at trial, and they have yet attempted to show good cause for the delay in their disclosure.  Instead, defendants simply notified plaintiffs of their intent to take Dr. Sardo's deposition for use at trial over one year and three months after the time for said disclosures expired.

Rather than provide *any* basis for why defendants failed to properly and timely disclose Dr. Sardo as an expert witness,[3] defendants suggest that merely because plaintiffs knew of Dr. Sardo and his August 31, 2010 report, then plaintiffs should have known he might be called to testify.  Defendants provide no case law for such a proposition, likely because it defeats the purpose of the disclosure requirements of the Federal Rules of Civil Procedure.  It is absurd to suggest that a party is put on notice that a witness might testify simply because opposing counsel knew about the existence of the witness during discovery.  In any litigation, not all of plaintiff's doctors and medical examiners are expected to provide evidence at trial.  And in this case, defendants knew plaintiffs had no intention of using Dr. Sardo as a witness at trial since at least the filing of plaintiffs' witness list on October 3, 2012 [DE 42], as amended on March 28, 2013

---

[3]Even non-expert witnesses are required by Rule 26(a)(3) to be disclosed no later than 30 days before trial, unless the Court orders otherwise—which it did here by ordering the parties to identify their trial witnesses in the pretrial order, with any supplementation to any documents to be no later than 14 days prior to the final pretrial conference [DE 37; DE 56].

[DE 70], which both omitted Dr. Sardo's name.

Importantly, defendants failure to properly and timely disclose Dr. Sardo caused prejudice to plaintiffs in many respects. Because discovery has been closed, plaintiffs were not able to depose Dr. Sardo prior to the defendants' deposition, and plaintiffs are precluded from having their own experts address the deposition testimony of Dr. Sardo. *See e.g., Mid-America Tablewares Inc., v. Mogi Trading Co.*, Ltd., 100 F.3d 1353, 1363 (7th Cir. 1996) (delayed disclosures were found harmless where they did not interfere with the other party's ability to prepare for a deposition or to allow the other party's expert to formulate an opinion on the case). Defendants last minute disclosure of Dr. Sardo only 1 day before the final pretrial conference also prevented the plaintiffs from having any opportunity to file timely objections to Dr. Sardo's deposition (which plaintiffs contend they have), because these objections were due 21 days prior to the final pretrial conference [DE 56]—deadlines which were not to be extended "without good cause" [DE 56 at 3].

To repeat, the defendants provide absolutely no excuse for their disclosing the need to take Dr. Sardo's deposition for use at trial a mere 35 days before the trial and only 1 day prior to the final pretrial conference. The defendants conduct violates not only the Federal Rules of Civil Procedure, without any showing of good cause, substantial justification, or harmlessness, *see* Fed. R. Civ. P. 16 (b)(4), 26(a)(2), 37(c), but it also violates this Court's orders controlling the allowable time for expert disclosures, *see e.g.*, DE 24 (allowing defendants an extension until December 30, 2011 to disclose experts under Rule 26(a)(2)); DE 56 (requiring the parties to disclose expert witnesses pursuant to Rule 26(a)(2) with any objections to be filed at least 21 days before the final pretrial conference). And counsel were explicitly warned that those "who

16

have not identified their witnesses and physical or documentary evidence as ordered will be precluded from offering the same at trial, except upon a showing of good cause." [DE 56 at 3]. No cause, let alone good cause, has been demonstrated by defendants.  Moreover, under Rule 37(c)(1), non-disclosed expert testimony is automatically excluded unless "the failure was substantially justified or is harmless."  *Tribble v. Evangelides,* 670 F.3d 753, 758 (7th Cir. 2012) (citing Fed. R. Civ. P. 37(c)(1); *Musser v. Gentiva Health Serv's*, 356 F.3d 751, 758 (7th Cir. 2004)).  In this case, it was neither.  Accordingly, defendants are precluded from admitting evidence from Dr. Sardo's deposition at trial and plaintiffs' motion is granted in this respect [DE 89].

The Court would note that plaintiffs have mentioned having potential objections to Dr. Suh's deposition testimony which was taken on May 22, 2013, but no objections have been filed. As a result, since discovery long ago closed (**and cannot be conducted without leave of Court**) this case is ready for trial and will so proceed.

**IV.    DE 107: Plaintiffs' supplemental memorandum in opposition to DE 88 relative to Patricia Deatrick's qualifications to testify about Paul Shock's diagnosis of PTSD.**

On May 20, 2013, the Court issued an order in limine provisionally granting defendants' motion in limine and supplement thereto [DE 78; DE 88] and forbidding plaintiffs from introducing the deposition testimony of Patricia Deatrick with respect to her opinion that Paul Shock is suffering from PTSD [DE 97 at 11-20].  In summary, the Court determined: (1) that while Ms. Deatrick's credentials and experience would theoretically qualify her to make such a diagnosis, the plaintiffs failed to provide the actual evidence of her qualifications and experience; (2) testimony of whether Paul Shock is suffering from PTSD is relevant and helpful to the trier of

fact; (3) Ms. Deatrick's diagnosis of PTSD was not based on sufficient facts or data where she heavily relied on Paul Shock's self-reported history without ruling out other causes like malingering and secondary gain; and (4) it was not clear that Ms. Deatrick applied any scientifically accepted principle or method to the facts of this case in reaching her diagnosis of PTSD. As a result, plaintiffs filed a supplemental memorandum [DE 107] attempting to rectify the shortcomings in their initial briefing, to which defendants responded [DE 110]. Plaintiffs did not file a reply.

The Court need not repeat the various legal principles and controlling law with respect to the requirements that must be met in order to have a witness qualified to testify as an expert under Fed. R. Evid. 702 and *Daubert*. Rather the Court incorporates herein its previous order in this respect [DE 97 at 11-20], and only addresses whether plaintiffs most recent filings are sufficient to qualify Ms. Deatrick as an expert on Paul Shock's diagnosis of PTSD.

Relative to Ms. Deatrick's qualifications, plaintiffs have now provided sufficient evidence that Ms. Deatrick is competent to both diagnose and treat mental and emotional disorders, like PTSD. Ms. Deatrick has not only obtained her bachelor and master's degrees in social work, but she has been licensed as an independent social worker by the State of Ohio. In order to secure this license, she had to earn her master's degree in social work, complete at least two years of post-master's degree social work experience under the supervision of an independent social worker, and she had to pass the examination administered by the social workers professional standards committee board [DE 107 at 8]. With this license, Ms. Deatrick is able to provide a psychosocial assessment of patients, including the diagnosis and treatment of mental and emotional disorders and counseling [De 107 at 6-7]. Her list of experience in the

18

mental health field is extensive [DE 107 at 9-10] as demonstrated in her recently filed deposition [DE 105], and she has specifically treated patients with PTSD in the past [DE 107 at 9].

But the problem is no longer a lack of proof relative to Ms. Deatrick's ability to diagnose and treat patients with mental and emotional disorders.  The shortcoming still is that plaintiffs have not shown that Ms. Deatrick actually diagnosed Paul Shock with PTSD.  And even if she did, plaintiffs have not revealed the diagnostic tools used by Ms. Deatrick to diagnosis Paul Shock with PTSD.  Nor have plaintiffs sufficiently demonstrated that her diagnosis of PTSD was based on sufficient facts or data after ruling out other causes like malingering and secondary gain.

Plaintiffs argue they have met their burden by providing the entire Defiance Regional Psychiatric Services file on Paul Shock [Exhibit 6O] and Ms. Deatrick's progress notes of Paul Shock's treatment at Defiance Regional Psychiatric Services [Exhibit D].  Plaintiffs believe that these records purportedly show that Ms. Deatrick actually diagnosed Paul Shock with PTSD— but she didn't.  Rather, Ms. Deatrick's initial diagnostic impression of Paul Shock on February 17, 2009, after completing a psychosocial assessment, was that he suffered from Adjustment Disorder with mixed anxiety and depressed mood, with the need to rule out PTSD [Exhibit 6O at 1-3A; Exhibit D at 3B-4].  After continued weekly outpatient therapy, Ms. Deatrick determined sometime around April 2009 that Paul Shock needed to see psychiatrist Dr. Mercado for an evaluation for medication because she thought he might be suffering from something a little more serious than Adjustment Disorder [Exhibit 6O at 11; Deatrick depo. 10-11, 48].  Dr. Mercado then saw Paul Shock and revised Paul's diagnosis to PTSD [Exhibit 6O at 2, 19-20; Deatrick depo. at 11].

19

Thereafter, Ms. Deatrick's progress notes speak of Paul Shock suffering from symptoms of PTSD, but no records identified by plaintiffs indicate that Ms. Deatrick ever personally diagnosed Paul Shock with PTSD.  And even if she did, the medical records never identify the methods or principles employed by Ms. Deatrick (other than general observation) to determine Paul Shock had PTSD.  Ms. Deatrick may be "very confident" that Paul Shock suffers from PTSD from her observations of Paul [Deatrick depo. at 12], but this is insufficient under Rule 702 and *Daubert*.  Certainly, Ms. Deatrick's working alongside Drs. Mercado and Sepahbodi (Paul Shock's other psychiatric doctor) at Defiance Regional Psychiatric Services, does not make her personally qualified to testify relative to Paul Shock's having PTSD.  Moreover, the plaintiffs' position that no other medical providers disagree that Paul Shock suffers from PTSD also does not make Ms. Deatrick qualified to testify to the same.  Lastly, plaintiffs' own expert, Dr. Sepahbodi has testified that pursuant to the DSM-IV, malingering is to be ruled out before a diagnosis of PTSD is to be made [Sepahbodi depo. At 46-50], yet it is clear that Ms. Deatrick was not qualified to make an assessment of whether Paul Shock was faking or malingering, rather she expected the doctor to confirm Paul Shock was not seeking secondary gain [Deatrick depo. 23, 44-46, 56, 67-68].  And the attempt by plaintiffs' counsel to (again) weave Ms. Deatrick's testimony into the DSM-IV elements for a diagnosis of PTSD does not suffice.

There simply is insufficient evidence in the record to allow Ms. Deatrick to be qualified under Rule 702 and *Daubert* to diagnose Paul Shock with PTSD.  As a result, any evidence of Ms. Deatrick's testimony concerning PTSD or malingering is barred from the trial in this case.

The Court will contact counsel to set a trial date.  Counsel are once again reminded not to engage in further discovery without leave of Court.

SO ORDERED.

ENTERED:  September 30, 2013 

                        /s/ JON E. DEGUILIO        
                        Judge
                        United States District Court